No. 24-704

---

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

DEFENSE FOR CHILDREN INTERNATIONAL – PALESTINE; AL-HAQ;
AHMED ABU ARTEMA; MOHAMMED AHMED ABU ROKBEH;
MOHAMMAD HERZALLAH; AYMAN NIJIM; LAILA ELHADDAD; WAEIL
ELBHASSI; BASIM ELKARRA; and DR. OMAR EL-NAJJAR,

*Plaintiffs-Appellants,*

v.

JOSEPH R. BIDEN, JR., *President of the United States*; ANTONY J. BLINKEN,
*Secretary of State*; and LLOYD JAMES AUSTIN III, *Secretary of Defense,* in
their official capacities,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Northern District of
California, Case No. 4:23-cv-05829-JSW

---

APPELLANTS' PETITION FOR REHEARING EN BANC

---

| | |
|---|---|
| Pamela C. Spees | Marc Van Der Hout |
| Katherine Gallagher | Johnny Sinodis |
| Maria C. LaHood | VAN DER HOUT LLP |
| Sadaf M. Doost | 360 Post Street, Suite 800 |
| Diala Shamas | San Francisco CA 94108 |
| Samah Sisay | (415) 981-3000 |
| CENTER FOR CONSTITUTIONAL RIGHTS | |
| 666 Broadway, 7th Floor | |
| New York, NY 10012 | |
| (212) 614-6464 | |

*Attorneys for Plaintiffs-Appellants*

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

REASONS REQUIRING REHEARING EN BANC ................................................. 1

BACKGROUND ..................................................................................... 2

ARGUMENT ....................................................................................... 5

   I.  REHEARING EN BANC IS REQUIRED BECAUSE THE QUESTION
      OF WHETHER COURTS ARE POWERLESS TO REVIEW LEGAL
      QUESTIONS IMPLICATING FOREIGN POLICY, INCLUDING
      CLAIMS THAT THE EXECUTIVE IS COMPLICIT IN GENOCIDE,
      IS OF EXCEPTIONAL IMPORTANCE. ........................................................ 5

  II.  REHEARING EN BANC IS REQUIRED BECAUSE THE PANEL'S
      DECISION CONFLICTS WITH SUPREME COURT PRECEDENT
      AND DECISIONS FROM THIS AND OTHER CIRCUITS. ........................ 7

     A. The Panel Decision Conflicts with Supreme Court Precedent from
        *Marbury* to *Zivotofsky* and Foreign-Relations Political-Question
        Decisions of This and Other Circuits, Which Have Repeatedly
        Affirmed that Legal Questions are Justiciable. .......................... 7

     B. The Panel Decision Conflicts with Precedent of the Supreme Court,
        and This and Other Circuits, Which Have Found Judicially
        Manageable Standards Exist to Adjudicate Claims of Aiding and
        Abetting Genocide. ............................................................. 15

CONCLUSION .................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Shimari v. CACI Premier Tech., Inc.*,
    840 F.3d 147 (4th Cir. 2016) ...............................................................14

*Al-Tamimi v. Adelson*,
    916 F.3d 1 (D.C. Cir. 2019) ................................................13, 14, 16

*Alperin v. Vatican Bank*,
    410 F.3d 532 (9th Cir. 2005) ..................................................9, 11, 12

*Baker v. Carr*,
    369 U.S. 186 (1962).................................................................2, 8, 11

*Boumediene v. Bush*,
    553 U.S. 723 (2008).................................................................13

*Corrie v. Caterpillar, Inc.*
    503 F.3d 974 (9th Cir. 2007) ............................................8, 9, 11, 12

*Ctr. for Biological Diversity v. Mattis*,
    868 F.3d 803 (9th Cir. 2017) ................................................2, 11, 17

*DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.*,
    810 F.2d 1236 (D.C. Cir. 1987) .........................................10

*Doe I v. Cisco Sys., Inc.*,
    73 F.4th 700 (9th Cir. 2023) ...............................................16

*El-Shifa Pharm. Indus. Co. v. United States*,
    607 F.3d 836 (D.C. Cir. 2010) (en banc)..........................10

*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006)...............................................................2, 13

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004)...............................................................2, 13, 15

*Hart v. Massanari*,
    266 F.3d 1155 (9th Cir. 2001) ...............................................6

*Japan Whaling Ass'n v. Am. Cetacean Soc'y,*
    478 U.S. 221 (1986).....................................................................................2, 11

*Kadić v. Karadžić,*
    70 F.3d 232 (2d Cir. 1995) ...........................................................................16

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    941 F.2d 970 (9th Cir. 1991) .........................................................................17

*Little v. Barreme*,
    6 U.S. (2 Cranch) 170 (1804) ........................................................................12

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ...................................................................1, 2, 8

*Mitchell v. Harmony*,
    54 U.S. (13 How.) 115 (1851) .......................................................................12

*Murray v. Schooner Charming Betsy*,
    6 U.S. (2 Cranch) 64 (1804) ......................................................................2, 12

*The Paquete Habana*,
    175 U.S 677 (1900).................................................................................2, 13

*Powell v. McCormack*,
    395 U.S. 486 (1969)...................................................................................17

*The Prize Cases*,
    67 U.S. (2 Black) 635 (1862)......................................................................2, 12

*Rasul v. Bush*,
    542 U.S. 466 (2004)...................................................................................13

*Sarei v. Rio Tinto, PLC,*
    671 F.3d 736 (9th Cir. 2011) .........................................................................16

*Saldana v. Occidental Petroleum Corp.*,
    774 F.3d 544 (9th Cir. 2014) (per curiam) .........................................................9

*Siderman de Blake v. Republic of Argentina*,
    965 F.2d 699 (9th Cir. 1992) ...........................................................................4

*Youngstown Sheet & Tube Co. v. Sawyer*,
 343 U.S. 579 (1952)..............................................................15

*Zivotofsky ex rel Zivotofsky v. Clinton,*
 566 U.S. 189 (2012)........................................................*passim*

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
 576 U.S. 1 (2015).................................................................8

**Statutes**

Alien Tort Statute, 28 U.S.C. § 1350......................................16

Genocide Convention Implementation Act, 18 U.S.C. § 1091 ..............................16

**Rules**

Fed. R. Civ. P. 35(a)(2) ..........................................................5

Fed. R. Civ. P. 40(a)(1)(C) ....................................................5

**International Materials**

Allegations of Genocide under Convention on Prevention and
 Punishment of Crime of Genocide *(Ukr. v. Russ.)*, Declaration of
 Intervention Under Article 63 of Statute Submitted by the United
 States of America (Sept. 7, 2022), https://www.icj-
 cij.org/sites/default/files/case-related/182/182-20220907-WRI-01-
 00-EN.pdf..............................................................14, 16

Application of Convention on Prevention and Punishment of Crime of
 Genocide in the Gaza Strip *(S. Afr. v. Isr.)*, Order (Jan. 26, 2024),
 https://www.icj-cij.org/sites/default/files/case-related/192/192-
 20240126-ord-01-00-en.pdf.......................................10, 16

Convention on Prevention and Punishment of Crime of Genocide,
 Dec. 9, 1948, S. Exec. Doc. O, 81-1 (1949), 78 U.N.T.S. 277 ....................7, 14

**Other Authorities**

*Reported impact snapshot: Gaza Strip, 21 August 2024 at 15:00,* United Nations Off. for Coordination of Humanitarian Affs. (Aug. 21, 2024), https://www.unocha.org/publications/report/occupied-palestinian-territory/reported-impact-snapshot-gaza-strip-21-august-2024-1500 ...................................................................................3

<u>**REASONS REQUIRING REHEARING EN BANC**</u>

This case raises a question of exceptional importance with the gravest of implications: Can Executive Branch officials aid and abet genocide in violation of federal and international law without any "check" by the courts when the violation is committed within the realm of foreign policy? The result of the panel's decision is that illegal action by the Executive, no matter how egregious in nature and catastrophic in effect, becomes a non-justiciable political question when it implicates foreign affairs. This ruling does violence to foundational separation of powers principles with far-reaching and dangerous implications. It grants Defendants and all future Executives unbridled and unreviewable power in foreign relations, including to further or even commit the most egregious of crimes—the intentional destruction of a people.

In answering "yes" to this urgent question, the panel decision conflicts with more than two centuries of Supreme Court precedent, stretching from *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803) to *Zivotofsky ex rel. Zivotofsky v. Clinton* (*Zivotofsky I*), 566 U.S. 189 (2012), which has repeatedly affirmed that the judiciary, as a co-equal branch of government, must fulfill its Constitutionally-mandated duty to decide cases and controversies in which the *legality* of executive conduct, and not a discretionary policy decision, is at issue. This precedent includes cases, which the panel ignored, assessing the legality of executive conduct with profound foreign

policy implications, *even* when the United States was at war, including, but certainly not limited to, *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64 (1804), *The Prize Cases*, 67 U.S. (2 Black) 635 (1862), *The Paquete Habana*, 175 U.S 677 (1900), *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), and *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006). It includes precedent underscoring that there is no blanket foreign relations exception to this duty. *See Baker v. Carr*, 369 U.S. 186 (1962); *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986). And, it conflicts with this Circuit's ruling that simply because a claim "touches on subjects of national security and foreign affairs" it is not rendered nonjusticiable as a political question. *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 827 (9th Cir. 2017).

Given the far-reaching implications of the panel's ruling presenting questions of exceptional importance and its drastic departure from long-established precedent, consideration by the full Court is necessary to ensure uniformity of decisions in this Court, and, indeed, the basic founding structure and function of the United States government as "a government of laws, and not of men." *Marbury*, 5 U.S. (1 Cranch) at 163.

## **BACKGROUND**

Plaintiffs-Appellants, five Palestinian-Americans with family in Gaza, two Palestinian organizations with staff in Gaza, and three Palestinians in Gaza, brought suit on November 13, 2023, seeking declaratory and injunctive relief against

Defendants-Appellees President Joseph Biden, Secretary of State Antony Blinken, and Secretary of Defense Lloyd Austin for aiding and abetting Israel's genocide in Gaza. At that time, at least 115 members of Plaintiffs' families had been killed in Israel's assault on Gaza. 3-ER-321. As of their opening appellate brief, more than 200 members of Plaintiffs' families had been killed. Appellants' Br. 19, ECF No. 22.

The number of those killed by Israeli forces in Gaza has nearly tripled since November—from 11,000 to over 40,000, many of them children.[1] More than 92,000 Palestinians have been injured, nearly two million displaced, and Gaza's entire population of 2.2 million is facing crisis-levels of starvation resulting from Israel's infliction of a siege that denies basic necessities for life, intended to bring about their destruction.[2] With Defendants' knowing assistance, Israeli bombardment has destroyed housing and critical infrastructure, including water and sanitation facilities, decimated Gaza's healthcare system, and leveled educational, social, and religious institutions. It is *undisputed* that Defendants have provided, and continue to provide, the weapons for Israel's mass destruction of human life.

---

[1]     *Reported impact snapshot: Gaza Strip, 21 August 2024 at 15:00,* United Nations Off. for Coordination of Humanitarian Affs. (Aug. 21, 2024), https://www.unocha.org/publications/report/occupied-palestinian-territory/reported-impact-snapshot-gaza-strip-21-august-2024-1500.

[2]     *Id.*

Genocide is universally proscribed and subject to criminal prohibitions under federal and international law. Plaintiffs allege that Israel, acting with intent to destroy in whole or in part the Palestinian population in Gaza, has committed genocidal acts, namely (i) killing members of the Palestinian population in Gaza, (ii) deliberately inflicting on the Palestinian population of Gaza conditions of life calculated to bring about its physical destruction in whole or in part, and (iii) causing serious bodily or mental harm to the Palestinian population in Gaza. 3-ER-419–507, ¶¶66–165. The prohibition on genocide is a *jus cogens* norm in customary international law that is an *erga omnes* duty (owed to all), binding on all states at all times. *See Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 714–15 (9th Cir. 1992).

Plaintiffs further allege that Defendants have been, or should have been, aware of the serious risk that Israel would commit genocide—or it was underway—but that despite such awareness, Defendants knowingly provided assistance to Israel, including the vast majority of weapons and military equipment being used in Gaza against the Palestinian population, with substantial effect on Israel's commission of genocide, and failed to exercise their considerable influence to prevent the genocide, as required by the law prohibiting genocide. 3-ER-419–507, ¶¶166–248. *See also* 2-ER-217, ¶10 (expert testimony that "it would be impossible for Israel to have

conducted the past two months of military operations as it has without utilizing a vast amount of U.S.-origin weaponry.").

After oral argument and an evidentiary hearing on January 26, 2024, the district court dismissed the matter, finding that it presented a political question, even while observing that "the undisputed evidence . . . indicates that the current treatment of the Palestinians in the Gaza Strip by the Israeli military may plausibly constitute a genocide in violation of international law" and "implore[d] Defendants to examine the results of their unflagging support of the military siege." 1-ER-6, 10. Plaintiffs pursued an urgent appeal and on July 15, 2024, the panel affirmed the district court's ruling. ECF No. 77. Plaintiffs' Petition is timely filed pursuant to Federal Rule of Appellate Procedure 40(a)(1)(C).

## **ARGUMENT**

### I. **REHEARING EN BANC IS REQUIRED BECAUSE THE QUESTION OF WHETHER COURTS ARE POWERLESS TO REVIEW LEGAL QUESTIONS IMPLICATING FOREIGN POLICY, INCLUDING CLAIMS THAT THE EXECUTIVE IS COMPLICIT IN GENOCIDE, IS OF EXCEPTIONAL IMPORTANCE.**

Rehearing en banc is appropriate where "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(2). There could hardly be a clearer case of such a question. The panel decision gave Defendants, and all future Executive Branch officials, a blank check to violate the law in the realm of foreign affairs, without any judicial review. It did so in a case of genocide—the "crime of

5

crimes"—while Palestinians in Gaza continue to be killed and face unprecedented levels of starvation while still living under siege, all substantially aided by Defendants.

This Court has found en banc review warranted to "answer questions of general importance likely to recur, or to resolve intracircuit conflicts, or to address issues of transcendent public significance." *Hart v. Massanari,* 266 F.3d 1155, 1172 n.29 (9th Cir. 2001) (internal quotations omitted). This case implicates all three considerations: First, by handing Defendants this blank check, the panel assures that their conduct will continue and more Palestinians in Gaza will be killed in this genocidal campaign. It also communicates to future Executive Branch officials that they can violate clearly defined and binding law in the foreign affairs realm without consequence. Second, as set forth below, the decision conflicts with long-standing Supreme Court precedent as well as decisions from this and other circuits.

Finally, the question presented is one of transcendent public significance—for Plaintiffs with surviving family in Gaza, for those in Gaza facing complete destruction, for the rule of law, and for basic principles of democratic governance put in place to guard against expansive, unchecked Executive power. It is likewise of significant importance for the United States' standing globally, as it relates to the United States' willingness and ability to hold itself and its officials to commitments made to the international community through ratifying a binding treaty—here, the

6

Genocide Convention—to prevent and punish violations that generally occur in the context of foreign affairs.

## II. REHEARING EN BANC IS REQUIRED BECAUSE THE PANEL'S DECISION CONFLICTS WITH SUPREME COURT PRECEDENT AND DECISIONS FROM THIS AND OTHER CIRCUITS.

### A. The Panel Decision Conflicts with Supreme Court Precedent from *Marbury* to *Zivotofsky* and Foreign-Relations Political-Question Decisions of This and Other Circuits, Which Have Repeatedly Affirmed that Legal Questions are Justiciable.

The panel's ruling that the political question doctrine applies to allegations that defendants have "violated legal obligations rooted in international law, where the United States' foreign policy decisions were strongly implicated," Op. at 12, is a dramatic and dangerous distortion and expansion of what is a "narrow exception" to judicial review, and directly conflicts with the Court's most recent political question pronouncement. *Zivotofsky I*, 566 U.S. at 195. There, the Court overturned the lower courts' determinations that claims presented political questions because they would require the court to make a foreign policy decision about the political status of Jerusalem. The Court rejected these holdings, and a broad carve-out from judicial review of matters within the foreign affairs realm, when it reiterated the doctrine is a "narrow exception" to the rule that "the Judiciary has a responsibility to decide cases properly before it, even those it *would gladly avoid.*" *Id*. at 194–95 (internal quotations omitted) (emphasis added). Instead, because enforcement of a

specific statutory right was at issue, it held that the judiciary was "not being asked to supplant a foreign policy decision of the political branches with the courts' own unmoored determination of what United States policy toward Jerusalem should be," which it described as a "familiar judicial exercise." *Id*. at 196.[3]

The Court's pronouncement was its most recent affirmation of *Marbury*'s foundational principle that it is "emphatically the province and duty of the judicial department to say what the law is," 5 U.S. (1 Cranch) at 177, which it reiterated in *Baker*, 369 U.S. at 211, 217, where it confirmed there is no blanket "foreign relations" exception barring judicial review of executive conduct. *Id.* at 211–13.

But the panel minimized the foreign policy implications of adjudicating *Zivotofsky I*, which the Executive argued would significantly harm U.S. interests and compromise the Middle East peace process, 566 U.S. at 217 (Breyer, J., dissenting), and attempted to bend the Supreme Court's ruling into conformity with this Court's prior decisions in *Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007), *Alperin*

---

[3]     The panel's finding that "foreign policy" matters are committed to the Executive also conflicts with *Zivotofsky ex rel. Zivotofsky v. Kerry*, which declined to accept the Executive's argument that it had "broad, undefined powers over foreign affairs" and instead identified and analyzed the Executive's specific textual constitutional recognition power. 576 U.S. 1, 20 (2015). The panel did not even attempt to locate an Executive power vis-a-vis Plaintiffs' claims in the text of the Constitution, and there is none. Regardless, *Zivotofsky I* made clear that courts are obliged to adjudicate *legal* questions regardless of whether they relate to an issue that has a textually demonstrable constitutional commitment to the Executive. 566 U.S. at 197.

*v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005), and *Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544 (9th Cir. 2014) (per curiam), which are inapposite to the facts and legal questions presented here. In none of those cases were United States officials sued for violating a law. Those cases were brought against private corporations (*Corrie*, *Saldana*) and a foreign entity (*Alperin*), and this Court held that adjudication of the claims at issue would unduly interfere with the Executive's foreign policy *discretionary* decisions. They are thus not relevant to the claims in *this* case against *these* Defendants that they are *violating the law.*

Whether those cases were decided rightly or wrongly in light of Supreme Court precedent at that point may be debatable, but it is clear now that any reading of these cases that requires avoidance of judicial review of the *legality* of executive conduct in foreign policy was firmly rejected in *Zivotofsky I*. This case does not ask, as the panel claimed, "whether American economic and military aid to Israel is necessary and appropriate," Op. at 14, but whether Defendants' actions are legal.

The panel decision sidesteps the inescapable requirement of judicial review of such questions by asserting that "[m]any, if not most, grievances can be 'styled' as the violation of an asserted legal obligation." Op. at 11. Plaintiffs, who have lost over 200 family members in this assault, have not simply "styled" their claims against Defendants as aiding and abetting genocide to mask a disagreement with United States policy. They went beyond what is required at the pleading stage to

9

detail the factual and legal basis for these claims. And, in support of their preliminary injunction motion, they submitted declarations from three scholars of genocide and Holocaust studies who agreed, even at that early date, that a genocide was unfolding, 3-ER-379, ¶16, as well as a leading legal genocide expert, who warned of the serious risk of genocide. 3-ER-372, ¶31. The International Court of Justice (ICJ)[4] found that Israel's assault on the Palestinian people in Gaza plausibly constitutes genocide. It is undisputed that Defendants are providing Israel with the means for carrying out this assault. Plaintiffs challenge the legality of Defendants' actions, not "the prudence" of them. *See El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010) (en banc) (underscoring distinction between claims requiring courts to decide whether military action was "wise" or a "policy choice" (nonjusticiable) versus claims presenting "purely legal issues such as whether the government had legal authority to act" (justiciable)). *See also DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.*, 810 F.2d 1236, 1238 (D.C. Cir. 1987) (finding no political question where plaintiffs challenged the *legality* of implementing U.S. policy prohibiting funds to foreign NGOs that promote abortion abroad, rather than the "political and social wisdom of [the] foreign policy").

---

[4]     Application of Convention on Prevention and Punishment of Crime of Genocide in the Gaza Strip (*S. Afr. v. Isr.*), Order, ¶54 (Jan. 26, 2024), https://www.icj-cij.org/sites/default/files/case-related/192/192-20240126-ord-01-00-en.pdf.

While the panel decision noted *Baker*'s requirement that courts undertake a "discriminating analysis of the particular question posed" to determine whether it presents a political question, Op. at 8, 11, it failed to do so. Instead, the panel engaged in the kind of overbroad and indiscriminate analysis the Court rejected in *Zivotofsky I.* The Court has emphasized that this analysis must take account of the "nature and scope of the duty imposed upon" Executive Branch officials, which "calls for applying no more than the traditional rules of statutory construction, and then applying this analysis to the particular set of facts presented . . . ." *Japan Whaling*, 478 U.S. at 230. *Japan Whaling* reiterated that courts possess the authority to "construe treaties and executive agreements" and rejected the argument that claims involving "foreign relations" are nonjusticiable, finding instead that the case presented a "purely legal question of statutory interpretation." *Id.* at 229–30.

The panel decision also conflicts with this Court's decision recognizing that in cases "touching on subjects of national security and foreign affairs, a court does not adequately discharge its duty by pointing to the broad authority of the President and Congress and vacating the field without considered analysis." *Mattis*, 868 F.3d at 827 (citing *Baker*, 369 U.S. at 211). The panel did just that in vacating the field without considered analysis when it invoked *Corrie* and *Alperin* for a proposition with astonishing and far-reaching implications: that "the political question doctrine applies in the face of allegations that a defendant . . . *violated legal obligations* rooted

11

in international law, where the United States' foreign policy decisions were strongly implicated." Op. at 12 (emphasis added).

First, neither *Corrie* nor *Alperin* were brought against Executive Branch officials for alleged unlawful conduct, and any reading to suggest that such claims are barred as political questions has been rejected by *Zivotofsky I*. Second, this categorical abdication from cases rooted in international law and implicating foreign policy conflicts with Supreme Court decisions applying international law in cases that strongly implicated foreign policy, even in times of war. *See, e.g.*, *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) at 118; *Little v. Barreme*, 6 U.S. (2 Cranch) 170, 174 (1804) (finding president's order to seize foreign ship violated Congressional regulations and international law of neutrality); *Mitchell v. Harmony*, 54 U.S. (13 How.) 115, 126 (1851) ("no discretionary power existing in any executive officer" to seize property contrary to law "can be tolerated under our system of government"); *The Prize Cases*, 67 U.S. (2 Black) at 668 (ruling President Lincoln's naval blockade during Civil War consistent with customary international law). *See also* Constitutional Scholars Amici Br., ECF No. 34.

The panel also failed to acknowledge a key case "rooted in international law," Op. at 12, with strong foreign policy implications during wartime, in which the Court famously reaffirmed "[i]nternational law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction as often as

questions of right depending upon it are duly presented for their determination." *The Paquete Habana*, 175 U.S. at 700 (holding seizure of neutral states' vessels during Spanish-American war violated law of nations).

The panel decision also ignored more recent post-9/11 Supreme Court precedent which found a foreign policy "blank check" inconsistent with separation-of-powers, and affirmed the necessity of judicial review of unlawful executive determinations even during war and implicating "national security." The Court confirmed a robust judicial role in constraining executive conduct via statute, treaty and the Constitution. *See Rasul v. Bush,* 542 U.S. 466 (2004); *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004); *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006); *Boumediene v. Bush*, 553 U.S. 723 (2008). The collective force of these decisions reveals a stark conflict between the panel decision and Supreme Court precedents reaffirming the necessity of judicial review of executive actions that violate binding law, including international law. *See Hamdan*, 548 U.S. at 625–34.

Finally, the panel decision ignored and conflicts with post-*Zivotofsky I* cases from other circuits which emphasize the distinction between nonjusticiable claims concerning discretionary policy choices and justiciable claims concerning questions of legality. In *Al-Tamimi v. Adelson*, the D.C. Circuit reversed the political question dismissal of genocide claims against various actors for supporting settlements in the occupied Palestinian territory. 916 F.3d 1 (D.C. Cir. 2019). The district court had

held the case nonjusticiable because it would require the court "to wade into foreign policy involving one of the most protracted diplomatic disputes in recent memory." *Id*. at 5. But the D.C. Circuit rejected this holding, undertook a "discriminating analysis," and concluded that the genocide claims were purely a "legal determination" while other claims turning on the Executive's power to recognize sovereignty may not be justiciable. *Id*. at 8, 13–14. *See also Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 154 (4th Cir. 2016) (reversing district court's dismissal of claims against military contractor for torture and war crimes on political question grounds because the case challenged "the legality, rather than the reasonableness" of the conduct).

To the extent that the panel is suggesting that international law is optional as a policy choice, this is clearly contrary to precedent cited above, as well as foundational democratic principles and even the position of the Executive Branch, which recognized that the Genocide Convention creates *legal* obligations.[5] As explained, Plaintiffs' claims are "rooted" in the law of the land—as the panel recognized when it conceded that "some cases involving alleged genocide will be justiciable." Op. at 13. But it then dismissively asserted that the legal question of

---

[5]    *See* Allegations of Genocide under Convention on Prevention and Punishment of Crime of Genocide (*Ukr. v. Russ.*)*,* Declaration of Intervention Under Article 63 of Statute Submitted by the United States of America (Sept. 7, 2022), ¶22, https://www.icj-cij.org/sites/default/files/case-related/182/182-20220907-WRI-01-00-EN.pdf.

whether a genocide is being aided and abetted by United States officials is not the "be-all and end-all of the political question analysis." *Id*.

This is among the most chilling, and deeply disturbing, features of the panel opinion, because it clearly acknowledges that law exists that is intended to prevent this most serious crime, yet concludes that it may be violated by Executive Branch officials and courts will have nothing to do or say about it because it relates to foreign policy. Nothing in our founding documents or jurisprudential history supports such an abdication of duty. As Justice O'Connor explained in *Hamdi*, the Court has "long since made clear" that even "a state of war is not a blank check for the President." 542 U.S. at 536 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952)).

### B. The Panel Decision Conflicts with Precedent of the Supreme Court, and This and Other Circuits, Which Have Found Judicially Manageable Standards Exist to Adjudicate Claims of Aiding and Abetting Genocide.

The panel's concern that there are "no manageable standards to govern what kind of support to provide an ally in wartime," Op. at 9, misstates the question in this case: whether Defendants' support amounts to a violation of law—aiding and abetting a genocide—which is a legal question. *Zivotofsky I* confirmed that in assessing whether there were judicially manageable standards, "[f]raming the issue as . . . whether the Judiciary may decide the political status of Jerusalem, certainly

raises those concerns," but that they "dissipate . . . when the issue is recognized to be the more focused" legal question. 566 U.S. at 197.

The panel acknowledges (and Defendants concede) that "some cases involving genocide will be justiciable," Op. at 13, as they must, given that aiding and abetting[6] genocide is a clearly defined violation of law, including at 18 U.S.C. § 1091, and has been repeatedly found justiciable. *See, e.g., Al-Tamimi*, 916 F.3d at 11–12 (genocide claims brought under Alien Tort Statute ("ATS") judicially manageable); *Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 744, 759 (9th Cir. 2011), *vacated on other grounds sub nom. Rio Tinto PLC v. Sarei*, 569 U.S. 945 (2013) (genocide claims brought under ATS not barred by political question doctrine); *Kadić v. Karadžić*, 70 F.3d 232, 242 (2d Cir. 1995) (finding allegations state a cognizable ATS claim for genocide).[7] However, the panel then essentially defers to Defendants' determination of whether the judiciary has jurisdiction to adjudicate claims against them, turning separation of powers on its head.

---

[6]     Aiding and abetting is also indisputably clearly defined. *See, e.g., Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 726, 728 (9th Cir. 2023) (knowingly furnishing Chinese government "weapons and ammunition . . . or other resources relied on in the commission of the [international] crimes" demonstrates sufficient "substantial effect" to support aiding-and-abetting liability) (internal quotations omitted).

[7]     The duty to prevent genocide is also clearly defined in international law, as recognized by Defendants, in the recent United States filing to the ICJ in the *Ukraine v. Russia* proceedings, *supra* note 5. Nearly eleven months into the challenged conduct, with the ICJ (among others) finding the case of genocide against Palestinians in Gaza plausible, there can be no doubt there is at least a "serious risk" of genocide.

To the extent the panel's concern as articulated may relate to relief requested by Plaintiffs, it is misplaced, as the Court has "considerable discretion in fashioning suitable relief and defining the terms of an injunction." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). *See also Zivotofsky I*, 566 U.S. at 196 (finding case justiciable even though requested relief would have forced the Executive to reverse its foreign policy regarding Israel's sovereignty over disputed territory).

Contrary to the panel's assertion that "[i]t does not matter that plaintiffs have also sought a declaratory judgment" and its conclusory finding that this relief "present[s] the same political questions we discussed [for injunctive relief]," Op. at 14–15, precedent makes clear that courts have the responsibility to assess each claim for relief independently and can fashion relief they deem appropriate. *Mattis*, 868 F.3d at 815, 826, 829 (finding "the political question doctrine requires analysis on a claim-by-claim basis," and after independently reviewing claims for injunctive and declaratory relief, ruling that neither presented a political question). *See also Powell v. McCormack*, 395 U.S. 486, 517–18 (1969) (holding that petitioners' claims were not barred as political questions and noting that "a request for declaratory relief may be considered independently of whether other forms of relief are appropriate").

## **CONCLUSION**

Plaintiffs request that the Court grant this petition for rehearing en banc.

17

Dated: August 29, 2024                    Respectfully submitted,

Marc Van Der Hout                         /s/*Pamela C. Spees*
Johnny Sinodis                            Pamela C. Spees
VAN DER HOUT LLP                          Katherine Gallagher
360 Post Street, Suite 800                Maria C. LaHood
San Francisco, CA 94108                   Sadaf M. Doost
(415) 981-3000                            Diala Shamas
ndca@vblaw.com                            Samah Sisay
                                          CENTER FOR CONSTITUTIONAL RIGHTS
                                          666 Broadway, 7th Floor
                                          New York, NY 10012
                                          (212) 614-6430
                                          pspees@ccrjustice.org
                                          kgallagher@ccrjustice.org
                                          mlahood@ccrjustice.org
                                          sdoost@ccrjustice.org
                                          dshamas@ccrjustice.org
                                          ssisay@ccrjustice.org

18

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)**    | 24-704 |

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 4,132 | .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/Pamela C. Spees |    **Date** | Aug 29, 2024 |
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                   *Rev. 12/01/2021*